IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THEODORE BUSH | * |
| | * |
| v. | *   Civil No. JKS 13-1389 |
| | * |
| CAROLYN W. COLVIN | * |
| Acting Commissioner of Social Security | * |
| | * |

## MEMORANDUM OPINION

Plaintiff Theodore Bush brought this action pursuant to 42 U.S.C. § 405(g) for review of the Social Security Administration's (SSA) final decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. §§ 401 *et. seq.* (the Act). Both parties' motions for summary judgment are ready for resolution, *see* ECF Nos. 10 and 12, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Bush's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

1. **Background.**

Bush filed an application for DIB on June 12, 2009, R. 156, and an application for SSI on June 15, 2009, R. 132, with an alleged disability onset date of January 2, 2001. R. 25. Both claims were denied initially, R. 56, 60, and upon reconsideration. R. 66, 70. Bush then filed a written request for a hearing before an Administrative Law Judge (ALJ), and a hearing was held on September 22, 2011. R. 22. ALJ Thomas M. Ray issued a decision on January 18, 2012, finding that Bush was not disabled under the Act because he retained the residual functional capacity (RFC) to perform jobs available in significant numbers in the national economy. R. 20-21. The Appeals Council subsequently denied Bush's request for review on March 12, 2013, R. 1-3, and the ALJ's decision became the final, reviewable decision of the agency.

**2. <u>ALJ's Decision.</u>**

The ALJ evaluated Bush's disability claim using the five-step sequential process described in 20 C.F.R. § 404.1520.  At step one, the ALJ found that Bush had not engaged in any substantial gainful activity since the alleged onset date of January 2, 2001.  R. 16.  At step two, the ALJ found that Bush had two severe medical impairments: chronic obstructive pulmonary disease and back pain.  *Id.*  At step three, the ALJ found that Bush did not suffer from an impairment, or combination of impairments, listed in 20 C.F.R Part 404, Subpart P, Appendix 1.  R. 17.  At step four, the ALJ determined that Bush possessed the RFC to perform light work, but could only occasionally climb ramps, stairs, ladders, ropes and scaffolds, and stoop, crawl, and balance, must be able to use reading glasses, and must avoid moderate exposure to humidity, fumes, odors, dusts, gases, and poor ventilation.  *Id.*  At step five, given Bush's age, high school education, work experience, and RFC, the ALJ considered the testimony of the vocational expert (VE) and concluded that Bush is capable of work that exists in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ found that Bush was not disabled as defined under the Act and denied his applications for benefits.

**3. <u>Standard of Review.</u>**

The role of this court on review is to determine if the ALJ applied the correct legal standards in finding Bush not disabled, and if substantial evidence supports that conclusion.  42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995).  Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted).  To be substantial, there must be more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  This court may

not try the case *de novo*, and will affirm a decision if it is supported by substantial evidence. *Id.* If conflicting evidence could cause reasonable minds to differ on whether or not the claimant is disabled, it is the ALJ's right and responsibility to make that determination. *Craig v. Chater*, 76 F.3d, 589 (4th Cir. 1996) (citing *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)).

**4. Discussion.**

Bush argues that the ALJ erroneously assessed his RFC because the ALJ failed to properly evaluate the opinions of Dr. Ahmed Kafaji. ECF No. 10-1 at 6. Specifically, Bush asserts that Dr. Kafaji's records, which were submitted to the ALJ after Bush's administrative hearing, show that he had abnormal electromyelogram (EMG) results, abnormal MRI results, diminished deep tendon reflexes, diminished sensation and flexibility in his feet, a decreased range of motion and an antalgic gait. *Id.* at 7. Bush argues that had the ALJ properly considered these findings, "there is a reasonable probability that . . . he would have limited the Plaintiff to the performance of sedentary work," which, given Bush's vocational profile, would make him disabled under the disability guidelines. *Id.* at 9. However, as discussed below, the ALJ properly considered each of Dr. Kafaji's findings and incorporated the proven limitations into his RFC determination. The ALJ's assessment of Bush's RFC, and his conclusion that Bush could perform light work, is supported by substantial evidence.

As evidenced by Dr. Kafaji's reports, Bush's "EMG finding [was] suggestive of mild subacute-to-chronic C6 radiculopathy on the left side,"[1] R. 346, and his MRI showed "degenerative disc disease and [a] disc bulge with spinal stenosis in the cervical and lumbar

---

[1] "Radiculopathy is used to describe a 'disease of the nerve roots.'" *Harris v. Holland*, 87 F. App'x 851, 854 n.4 (4th Cir. 2004) (citing *Dorland's Illustrated Medical Dictionary* 1735 (28th ed.1994)).

spine."[2]  R. 350.  The ALJ concurred that "[o]bjective medical evidence shows a history of back problems" and that Bush's "[EMG] was normal except for findings of mild left radiculopathy," R. 19, but the ALJ also considered Dr. Michael Szkotnicki's opinion that "X-rays of [Bush's] lumbosacral spine and cervical spine were essentially negative" and that Bush "had a little degenerative joint disease but everything else look[ed] fine."  R. 237.  Bush himself reported to Dr. Kafaji that he measured his normal pain "at the rate of 4/10," and while it tends to increase "to 8/10 during activities and movement," the pain decreases "by taking medication which is Percocet and by rest[ing]."  R. 350.  Indeed, Dr. Kafaji's physical examination revealed that Bush was "apparently in pain but not in distress," and recommended that Bush exercise, decrease his weight, use a heating pad and avoid alcohol with his medications.[3]  *Id.* at 351.  The ALJ also noted a December 2009 report by Dr. Linda Sloan that concluded that Bush could touch his toes and had no problem dressing or undressing or putting his shoes on while standing up.  R. 18; R. 287-89.  Ultimately, the ALJ accounted for Bush's radiculopathy by limiting Bush to light work and only occasional stooping, crawling and balancing.  R. 17; *see D'Almeida v. Astrue*, Case No. PWG 10-2095, 2012 WL 395201, at *3 (D. Md. Feb. 6, 2012) (affirming ALJ's decision limiting plaintiff to light work despite plaintiff's history of herniated discs); *Bogan v. Colvin*, Case No. BD 12-300, 2014 WL 29040, at *2 (E.D. Ark. Jan. 2, 2014) (affirming ALJ's determination that plaintiff could do light work, including some lifting, carrying, walking and standing, despite a fracture of the lumbar spine, degenerative disc disease in the neck and back, and right lumbar radiculopathy).  Thus, although the ALJ concluded that Bush's back pain was severe enough to

---

[2] "Spinal stenosis is defined as the 'narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine.'" *Lehman v. Astrue*, 931 F. Supp. 2d 682, 690 n.3 (D. Md. 2013) (citing *Dorland's Illustrated Medical Dictionary* at 1770 (32d ed. 2012)).

[3] Bush was eventually discharged from Dr. Kafaji's care for testing positive for cocaine use in violation of his Pain Management Contract.  R. 333.  As noted by Dr. Sloan in her December 12, 2009 report, Bush reported that he used "cocaine every 3-4 days."  R. 287.

"cause more than a minimal restriction in the claimant's work-related abilities," he reasonably concluded that Bush could perform light work and that the specific clinical and diagnostic findings did not support a finding of disability as a result of his back pain.[4]

With regard to Bush's gait, Dr. Kafaji did not conclude that Bush had an abnormal gait; rather, Dr. Kafaji stated that his "gait is normal. It is antalgic but steady." R. 351. Thus, the ALJ was not required to account for an abnormal gait in fashioning Bush's RFC. Similarly, the ALJ did not need to account for Dr. Kafaji's cursory notation that Bush had diminished sensation and flexibility in his feet. R. 351. Bush never mentioned—to the ALJ or to Dr. Kafaji—pain or problems associated with his feet. R. 24-44; R. 350. He experienced some difficulty with walking long distances, but this resulted from breathing troubles, not foot troubles. R. 36-37.

Bush also points to Dr. Kafaji's findings that he experienced diminished deep tendon reflexes and a decreased range of motion, but these findings are in direct conflict with Dr. Sloan's findings. As noted by the ALJ, R. 18, Dr. Sloan concluded that Bush could ambulate well, get on and off the examination table without issue, had a full range of motion throughout his body, could touch his toes, had a negative bilateral straight leg raise, had full strength throughout his body and no neurological deficits. R. 288-89. Furthermore, Bush fails to explain how these alleged limitations would prevent him from performing light work, as contemplated by his RFC.

Bush next argues that, based on Dr. Kafaji's findings, the ALJ should have limited his capacity to stand and walk in fashioning the RFC assessment. ECF No. 10-1 at 8. As stated earlier, Bush never testified that he had any limitations in standing or walking because of his back or neck pain. His ability to walk was limited by his shortness of breath, R. 295, and neither

---

[4] Notably, despite Bush's contention that he should be limited to sedentary work, not one physician suggested that he should be so limited.

Dr. Kafaji nor Bush claims that his RFC should be different because of Bush's breathing issues. A diagnosis of mild radiculopathy, by itself, does not necessarily warrant a certain limitation or impairment. *See Hott v. Astrue*, Case No. JKB 9-2729, 2010 WL 4781303, at *4 (D. Md. Nov. 17, 2010) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988) ("A diagnosis by itself does not establish impairment, let alone a severe impairment or disability.")). Furthermore, because the ALJ limited Bush to "light work," Bush is only required to stand or walk "off and on, for a total of approximately 6 hours of an 8-hour workday" and "[s]itting may occur intermittently during the remaining time." *See* SSR 83-10. Thus, the requirements of light work inherently limit the extent to which Bush must walk and stand throughout the workday.

Finally, Bush argues that the ALJ should not have given great weight to the opinions of the state agency examiners, Dr. Hakkarinen and Dr. Singh, because they did not issue their opinions until after Bush visited Dr. Kafaji and received his EMG and MRI results. ECF No. 10-1 at 8. As a preliminary matter, the ALJ did not rely solely on the opinions of Dr. Hakkarinen and Dr. Singh in fashioning Bush's RFC. The ALJ also relied heavily on the opinions of Dr. Michael Szkotnicki, Dr. Anil Shah and Dr. Linda Sloan. R. 18. Dr. Szkotnicki concluded that Bush's "back is without any obvious deformity," that the "X-rays of the lumbosacral spine and cervical spine were essentially negative," and that Bush "had a little degenerative joint disease but everything else looks fine." R. 237. Dr. Shah concluded that Bush tested "[p]ositive for back pain," R. 245, and Dr. Sloan noted that Bush "complains of low back pain" but noted that Bush had a "full range of motion at his hips, ankle, cervical spine . . . lumbar spine" and was "actually able to touch his toes." R. 289. As for the state agency consultants, Dr. Hakkarinen noted that Bush was experiencing "difficulty getting dressed and engaging in appropriate hygiene" because of his "back problems . . . [that] . . . affect[] his ability to bend over," R. 295,

but ultimately concluded that Bush could stand and/or walk for a total of 6 hours in an 8 hour workday and occasionally stoop, kneel and crouch. R. 291-92. Dr. Nisha Singh affirmed these findings in July 2010, one month prior to Dr. Kafaji's examination of Bush. R. 325. The ALJ properly assigned great weight to the findings of the state agency consultants because their findings were consistent with the findings of Dr. Szkotnicki, Dr. Shah and Dr. Sloan, and to a large extent, Dr. Kafaji. It is not clear what the state agency consultants would have viewed differently even if Dr. Kafaji's examination results had been available to them at the time they conducted their reports. The MRI and EMG results only confirmed what the previous physicians already knew: that Bush tested positive for back pain and that he had "a little degenerative joint disease." The additional impairments noted by Dr. Kafaji—that Bush experienced diminished deep tendon reflexes, a decreased range in motion, and a diminished sensation in his feet—either did not warrant a more restrictive RFC or were inconsistent with Bush's own testimony and the findings of Dr. Szkotnicki, Dr. Shah and Dr. Sloan.

**5. Conclusion.**

Substantial evidence supports the ALJ's conclusion that Bush was not disabled under the Act. Bush's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

Date:   May 5, 2014                                                    /S/
                                                           JILLYN K. SCHULZE
                                                           United States Magistrate Judge